**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| 360NETWORKS TENNESSEE, LLC, formerly known as IC FIBER TENNESSEE, LLC, | ) ) ) ) | |
| | ) | CASE NO. 05 C 3198 |
| Plaintiff, | ) | Consolidated with |
| | ) | CASE NO. 05 C 3200 and |
| v. | ) | CASE NO. 06 C 5558 |
| | ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois corporation, | ) ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of a fiber optic cable installation project along a railroad right-of-way. In particular, the parties dispute who must bear the substantial cost of relocating the cable in connection with the reconstruction of old and decaying timber bridges between Chicago and New Orleans.

In the recently submitted pre-trial order, the parties have drawn the Court's attention to a disagreement concerning the burden of proof to be applied at trial, the scope of the issues to be submitted to the jury, and the corresponding instructions to the jury. After considering the parties' written submissions, the Court determines that Illinois Central bears the burden of proof on its allegations that 360networks materially breached the agreements at issue. At present, the Court reserves ruling on the scope of the issues that will be submitted (and the instructions that will be given) to the jury. Those issues will be determined on the basis of the evidence presented at trial.

**I.     Background**

Illinois Central Railroad Company ("Illinois Central" or "IC") owns and operates a railroad between Chicago and New Orleans. 360networks Mississippi, LLC, 360networks Tennessee, LLC, and 360networks Louisiana, LLC (referred to collectively as "360networks" or "360") are Delaware limited liability companies that offer communication network services, such as installing and operating fiber optic networks. On May 28, 1999, and again on March 6, 2000, 360networks entered into license agreements with Illinois Central to construct and operate fiber optic facilities along Illinois Central's right-of-way in Mississippi, Tennessee, and Louisiana (from Chicago to New Orleans) as well as to provide fiber optic cable or transmission capacity to Illinois Central and third parties. In exchange for use of the right-of-way, 360networks paid Illinois Central $28 million and provided Illinois Central with limited use of the fiber optic facilities.

In 2005, 360networks sued Illinois Central for failing to pay the cost of relocating the cable at the eight bridges in Mississippi and Tennessee. Illinois Central denied liability and claimed that 360networks breached the agreements between the parties by installing the cable in the wrong locations. Illinois Central has brought claims to recover the costs that it incurred in relocating the cable at additional bridges in Mississippi and Tennessee and at bridges in Louisiana.

Summary judgment rulings have narrowed the issues in the case. See *Almy v. Kickert School Bus Line, Inc.*, 2009 WL 2972487, at *2 (N.D. Ill. Sept. 11, 2009) ("At the summary judgment stage, the Federal Rules of Civil Procedure give district courts the flexibility to move a case toward disposition by resolving some, but not all, of the issues raised in a motion for summary judgment. See Fed. R. Civ. P. 56(d)(1)"). The license agreements address the

possibility of cable relocation and provide that 360networks must bear the cost of relocation if relocation is ordered by any authority with jurisdiction to do so (§ 17.1), but that Illinois Central must bear the cost if the relocation is undertaken for any other reason (§ 17.2). In a May 10, 2007 opinion denying Illinois Central's motion for summary judgment and granting in part 360networks' motion for summary judgment, Judge Leinenweber determined that § 17.2 of the license agreements required Illinois Central to bear the cost of relocation unless 360networks breached the agreements.[1] Section 17.2 provides:

> If IC at any time determines that any part of a Facility must be changed, altered or relocated for any reason other than as set forth in Section 17.1, including additions or changes to track to accommodate customers of IC or in the event of any pre-planned work in the vicinity of such Facility which might case any possible hazard to such Facility, IC shall promptly notify 360 of such plans and IC shall, to the reasonable satisfaction of 360, with the least possible disruption of service, so change, alter, or relocate such Facility. All costs related thereto shall be borne by IC. If feasible, 360 shall be entitled, at IC's expense, to relocate the Facilities to the reasonable satisfaction of the Engineer.

Judge Leinenweber further noted that neither party produced working drawings during discovery and concluded that there was a genuine issue of material fact as to whether 360neworks breached the agreements by not installing the cable at the edge of the right-of-way:

> As the Agreement specifically provide that relocations due to pre-planned work will be paid for by IC, *the Court finds that the Agreements provide that IC will bear the cost of the relocation in the event that the Agreements were not breached*. This finding does not dispose of the liability issue in this case. As noted above, if 360 breached the Agreements by not installing the cable on the edge of the right of way, then 360 cannot expect to have the Agreements' provisions imposed in its favor * * * * Thus, *trial will be necessary as to the issue of the possible breach of the Agreements by 360.*

5/10/07 Opinion at p. 12 (emphasis added); see also *id*. at 10 ("This Court agrees that the Agreements clearly establish that IC must bear the cost of relocation, absent a breach").

---

[1] Judge Leinenweber ruled that Illinois Central was not ordered to rebuild the bridges by the Surface Transportation Board, and therefore 360networks could not be held liable for relocation costs pursuant to § 17.1.

After the parties completed additional discovery, 360networks filed a second motion for summary judgment before this Court. On October 26, 2009, the Court denied 360networks' motion, explaining that despite the additional discovery, there still was a genuine issue of material fact as to whether 360networks breached the agreements (i) by not installing the cable at the edge of the right of way or (ii) by installing the cable in locations that unreasonably interfered with Illinois Central's operations.[2] 10/26/09 Opinion at pp. 9-13. The Court also acknowledged an earlier point made by Judge Leinenweber and concurred that "if [Illinois Central] agreed to or approved the specific placement of the cable, it cannot very well argue that the placement 'unreasonably interfered' with its operations." 5/10/07 Opinion at 9; 10/26/09 Opinion at 10.

In laying out basic contract principles in its October opinion, the Court noted that "[t]o recover for a breach of contract, a plaintiff must prove, *inter alia*, that it complied with all of its material obligations under the contract. See, *e.g.*, *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (citing *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill. App. Ct. 1990)); see also

---

[2] Various provisions of the parties' agreements maintain that 360networks shall not install the facilities so as to unreasonably interfere with Illinois Central's operations. For instance, § 8.1 of the Agreement provides:

> [30networks], at [360networks'] sole cost, risk and expense, will furnish all materials, parts, components, equipment and structures necessary to construct, install, operate, maintain, repair, reinstall, replace and remove the Facilities, or any part thereof. Any and all such work by [360networks] shall be done in a good and workmanlike manner, in conformity with all applicable statutes, laws, ordinances, regulations, rules, codes, orders or specifications of any public body or authority having jurisdiction thereof (all of which shall control if inconsistent with or contradictory to the specifications set forth in this Section 8) and so as not to unreasonably interfere with IC's operations.

Section 8.3 contains a similar provision requiring that the facilities be installed in accordance with IC standards and in a manner so as not to "unreasonably interfere with any operations of IC." Additionally, § 14.1 provides, in pertinent part, that 360networks "shall maintain the Facilities so as to not interfere significantly with the operations of IC or adversely affect the safety of IC and its employees, officers, agents, grantees, licensees, lessees and invitees * * *."

*Normand v. Orkin Exterminating Co.*, 193 F.3d 908, 912 (7th Cir. 1999) (explaining that breach of contract claim fails if plaintiff failed to satisfy condition precedent to defendant's performance); *Brenner v. Greenberg*, 2009 WL 1759596, at *5 (N.D. Ill. June 18, 2009) (noting that, at a minimum, breach of contract plaintiff must perform all conditions precedent under a contract)." As the cases cited in the Court's October 2009 opinion illustrate, under Illinois law a party must prove that it complied with any *conditions precedent* under a contract before it can recover for the opposing party's breach of that contract. However, the parties did not raise, and the Court did not address, any issues concerning how the summary judgment rulings might affect the parties' respective burdens of proof at trial. Those issues have now surfaced in the parties' pre-trial order and require resolution so that the parties and the Court may prepare for trial.

**II.    Analysis**

In the pretrial order, the parties revealed their differing positions as to the scope of the issues to be decided and who is to bear the burden of proof at trial. Illinois Central contends that 360networks bears the burden of proof in the two cases (Tennessee and Mississippi) in which 360networks is the plaintiff, while Illinois Central bears the burden of proof in the Louisiana case, in which Illinois Central is the plaintiff. Illinois Central also contends that the jury should be instructed that 360networks "breached the license agreements by failing to perform all of its obligations under the license agreements." Illinois Central specifically requests that the Court instruct the jury as to nine different ways in which it may find that 360networks breached the agreements. By contrast, 360networks requests that the issues be framed as follows: "IC claims 360 materially breached the agreements by failing to install the fiber optic cable at the edge of the right of way or in locations that unreasonably interfered with IC's operations. The Court

concluded the cable does not interfere with IC's operations if IC approved the location of the cable."

This Court's decision on the burden of proof issue hinges on whether the contract provisions highlighted by Illinois Central as material breaches are conditional or promissory obligations on the part of 360networks. Courts have struggled for centuries to differentiate between conditions and promises. A condition has been defined as "an operative fact, one on which the existence of some particular legal relation depends." 3A A. Corbin, CORBIN ON CONTRACTS § 627, at 11 (1960). The Restatement similarly defines a condition as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." RESTATEMENT (SECOND) OF CONTRACTS § 224, at 160 (1981). A promise, on the other hand, occurs when one "expresses an intention that some future performance will be rendered and gives assurance of its rendition to the promisee." 3A CORBIN ON CONTRACTS § 633, at 25. Again, the Restatement is in accord: "A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." RESTATEMENT (SECOND) OF CONTRACTS § 2(1), at 8.

In regard to the burden of proof issue, the distinction between a promise and a condition becomes important in the event of nonfulfillment of a contract. As a general rule, a condition must be exactly fulfilled before liability can arise on the contract. 5 S. Williston, *supra,* § 675; 3A A. Corbin, *supra,* § 633. Illinois courts have agreed, defining a condition precedent as "one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform.'" *Catholic Charities v. Thorpe,* 741 N.E.2d 651, 653 (2000). Nonfulfillment of a promise, however, gives rise to a different

remedy: "The non-fulfillment of a promise is called a breach of contract, and *creates in the other party a secondary right to damages;* it is the failure to perform that which was required by a legal duty." 3A CORBIN ON CONTRACTS § 633, at 26 (emphasis supplied).

Whether contractual language is deemed conditional or promissory generally depends on the intention of the parties. See *Catholic Charities,* 741 N.E.2d at 654 ("a condition precedent * * * will not be found unless the intent to create such a condition is apparent from the face of the agreement"). Where the intent of the parties is not clear, the disputed language is generally deemed to be promissory rather than conditional. See *Sahadi v. Continental Ill. Nat. Bank & Trust Co.*, 706 F.2d 193 (7th Cir. 1983). Like the Seventh Circuit in *Sahadi*, Illinois courts have followed Professor Williston's classic rule that "'[w]here it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise.'" *LaGrange Federal Savings and Loan Ass'n v. Rock River Corp.,* 423 N.E.2d 496, 501 (1981) (quoting RESTATEMENT [FIRST] OF CONTRACTS, § 261 (1932)). In other words, a condition precedent must be stated expressly and unambiguously. See *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 798 (7th Cir. 1999). "Conditions precedent are generally indicated by the terms 'on the condition,' 'subject to,' 'when,' 'as soon as,' or other similar terms." *Chicago Graphic Arts Health and Welfare Fund v. Jefferson Smurfit Corp.,* 1995 WL 579538, at *7 (N.D. Ill. Sept. 28, 1995); see also *AAR Intern., Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 800 (N.D. Ill. 2002)

In this case, 360networks paid Illinois Central $28 million pursuant to the three licensing agreements, installed a fiber optic network along Illinois Central's route between Chicago and New Orleans, and provided the railroad with four fibers for use in operating the railroad. In exchange, Illinois Central gave 360networks use of Illinois Central's land on which 360networks

placed the cable. That was the crux of the parties' agreement. The remaining clauses on which Illinois Central relies – providing, among other things, that 360networks would install the cable in a location that does not unreasonably interfere with Illinois Central's operations – are promises, not conditions precedent to a valid agreement under Illinois law. See *Sahadi*, 706 F.2d at 195 (7th Cir. 1983) ("Contractual terms are presumed to represent independent promises rather than conditions"); see also *Interway, Inc. v. Alagna*, 407 N.E.2d 615 (1st Dist. 1980) ("Where it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise."). Had the parties expressly intended the location of the cable to be a condition precedent to the agreement, they easily could have included such language in § 17.2. See *Klemp v. Hergott Group, Inc.*, 641 N.E.2d 957, 962 (Ill. App. Ct. 1st Dist. 1994) ("There is a strong presumption against provisions that easily could have been included in the contract but were not."). The absence of any language indicative of a condition belies the assertion by Illinois Central that the parties intended the location of the cable to be a condition precedent to the formation of a valid contract.[3]

Because Illinois Central's defense to 360networks' breach of contract claim is based on 360networks's breach of a promise, rather than a condition precedent, 360networks is not required to prove performance of the promise; rather, Illinois Central has the burden of proving that 360networks breached the agreements. See *Normard v. Orkin Exterminating Co.*, 193 F.3d

---

[3] Although the language of the agreement alone is dispositive in this instance, the undisputed facts concerning the circumstances surrounding the initial installation of the cable provide further contextual support for the Court's construction of the pertinent contractual language. Although some of the details of those circumstances are disputed (see 10/26/09 Opinion at 11-12), there is no question that (1) both parties sent representatives to stake the route, (2) 360networks satisfied its initial financial obligations under the agreement, (3) Illinois Central accepted payment on the contract, and (4) approximately three years passed without incident. These circumstances indicate that neither party viewed the provisions concerning the location of the lines as conditions precedent, rather than ordinary terms of the contract. If performance of 360networks' installation obligations were a condition precedent to some performance by Illinois Central on the contract, one would have expected 360networks' level of performance to have been examined during or shortly after the installation work took place, not years later.

908, 911-12 (7th Cir. 1999). This ruling comports both with general principles of contract law in Illinois and with the prior rulings in this case – and, in particular, Judge Leinenweber's ruling that a trial is necessary to determine whether 360networks breached the agreements, such that Illinois Central would be relieved of its obligations under § 17.2. Illinois Central still may avoid liability by demonstrating that 360networks did not perform as promised under the agreement, but under the pertinent contract language, Illinois Central bears the burden of proving that 360networks' failed to deliver on its end of the bargain.

As set forth in both summary judgment opinions, the liability issue remaining for trial is whether 360networks breached the agreements by not installing the cable at the edge of the right of way or by installing the cable in locations that unreasonably interfered with Illinois Central's operations.[4] Most of the nine items listed as potential breaches in Illinois Central's proposed jury instructions relate to whether 360networks installed the cable in the proper location, *i.e.*, in locations that were approved by Illinois Central or in locations that did not unreasonably interfere with Illinois Central's operations. But the precise contours of the issues that will be presented to the jury in the Court's instructions must await the presentation of the evidence at trial.

---

[4] The Court also has concluded that 360networks did not breach the agreements if Illinois Central approved the location of the cable.

**III.    Conclusion**

For the reasons stated above, the Court determines that Illinois Central bears the burden of proof on its allegations that 360networks materially breached the agreements at issue and defers ruling on the additional matters relating to jury instructions that the parties discussed in their supplemental briefing.

Dated:  May 28, 2010         _____
                                              Robert M. Dow, Jr.
                                              United States District Judge