IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| 360networks Tennessee, L.L.C., formerly known as IC Fiber Tennessee, L.L.C., | ) ) ) ) | Case No. 05 C 3198 Consolidated with No. 05 C 3200 and |
| Plaintiff, | ) ) | No. 06 C 5558 |
| v. | ) ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois corporation, | ) ) ) | |
| Defendant. | ) | |

**360NETWORKS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Rule 50 of the Federal Rule of Civil Procedure, 360networks Mississippi, LLC, 360networks Tennessee, LLC, and 360networks Louisiana, LLC (collectively "360") respectfully move the Court for judgment as a matter of law on all of 360's claims and on all of the claims and counterclaims asserted by Illinois Central Railroad Company ("IC").

**RULE 50 STANDARD**

Rule 50(a)(1) provides that judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue…" Fed.R.Civ.P. 50(a)(1). Judgment as a matter of law under Rule 50(a) is appropriate if "reasonable persons could not find that the evidence justifies a decision for a party on each essential element." *Mayer v. Gary Partners & Co.,* 29 F.3d 330, 333 (7th Cir. 1994). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (holding no genuine factual issue exists where the nonmoving party fails to prove an essential element of its case); *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986) (stating that

standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must grant a directed verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict"). In considering a motion for judgment as a matter of law, the Court must view the record as a whole and must consider the record in the light most favorable to the non-moving party. *Zimmerman v. Chicago Bd. of Trade,* 360 F.3d 612, 623 (7th Cir. 2004).

**ARGUMENT**

Here, no reasonable person could find that IC did not approve the location of the cable. In addition, no reasonable person could find that 360 failed to maintain the cable or that 360 failed to provide as-built drawings to IC. As a result, the Court should grant 360's motion for judgment as a matter of law.

**A.      The evidence is undisputed that IC approved the location of the cable.**

The Court has already ruled "360networks did not breach the [License] Agreements if Illinois Central approved the location of the cable." (May 28, 2010 Memorandum Opinion and Order, p. 9 n.4; see also Oct. 26, 2009 Order, p. 9 (*citing* May 10, 2007 Opinion, p. 9)). Because the evidence is undisputed that IC approved the location of the cable, 360 is entitled to judgment as a matter of law on all claims, and the only remaining issue for the jury to decide is the amount of 360's damages.

The only witness IC called with any familiarity of the cable installation in Mississippi, Tennessee, or Louisiana was Gary Broda, 360's manager of railway services during the installation project. (Broda Testimony, 7:10 – 9:1). Broda unequivocally testified that IC representatives helped select the location where the

cable was installed, received and approved working drawings, and approved the location of the cable. Broda's uncontradicted testimony includes the following:

- 360 representatives "worked directly with the railway…to determine the exact placement of the cables." (*Id.,* 13:17 – 14:1).

- IC engineers were on site during the project and had authority to determine where the cable was to be installed. (*Id.*, 64:5-10).

- The location of the cable was "approved by the responsible [railroad] engineer on site." (*Id.*, 43:12 – 44:5).

- When the parties jointly selected where to install the cable, they were cognizant of the potential for future relocation projects and they decided to use directional boring at the bridges, rather than attaching the cable to the bridges, even though directional boring was ten times as costly. *(Id.*, 79:21 – 80:13).

- When determining where to install the cable, IC representatives often directed 360 to avoid certain locations within IC's right of way because of possible conflict with IC's buried plant or possible future building projects in the area. (*Id.*, 61:10 – 65:11).

- Working drawings were developed in the field in conjunction with IC engineers. Working drawings were prepared for each of the bridges along the route. *(Id.*, 29:14-19; 60:18 – 61:19).

- The working drawings were delivered to IC to approve, and IC approved the location where 360's cable was going to be installed. (*Id.*, 65:12-25).

- 360's cable was installed where IC wanted it installed, including at the wooden bridges along the route. (*Id.*, 99:25 – 100:4).

- IC never advised Broda of any complaints or objections regarding the working drawings. (*Id.*, 87:11-24).

Broda's testimony on each of these issues is undisputed.

Although IC's discovery responses identify 35 railroad employees who worked at the bridges or who had job responsibilities at or near the bridges during the period when the cable was installed (*see* Ex. 151, IC's Answers to 360's Second Set of Interrogatories, No. 1, 4), IC did not call any of those railroad employees to testify.

3

Likewise, IC did not offer testimony from a single person who worked in any of IC's 25 offices in Mississippi, Tennessee, or Louisiana during the installation project in 1999 – 2001. (*Id.*, Interrogatory No. 11).

The testimony of Dave Lowe, IC's Division Engineer for the Midwest Division in 1999-2000, does not preclude judgment for 360. Lowe's sworn testimony reflects that he did not have any responsibilities in Tennessee, Mississippi, or Louisiana. (Lowe Testimony, 7:8 – 8:7). During his testimony, Lowe was shown minutes from a September 10, 1999 pre-construction meeting, which state as follows:

> Iain Morris distributed the marked up route drawings to Dave Lowe. The route has been staked and approved in the field. Dave Lowe confirmed the route is to be approved in the field and only questions that cannot be solved should be directed to his attention.

(Ex. 105; Lowe Testimony, 10:16 – 12:12). Lowe testified that he did not remember anything at all about that meeting. (Lowe Testimony, 12:7-18). In fact, Lowe consistently testified he did not remember anything about this particular project or the details of the pre-construction meetings, other than the fact that he was not involved in any aspect of the project in Mississippi, Louisiana, or Tennessee. (*E.g.*, *id.* at 24:24 – 27:3). Lowe did not even remember what his role or responsibilities were with respect to this project in his own territory. (*Id.*, 26:26:10 – 27:3). Lowe also testified he does not remember seeing the drawings referenced in the meeting minutes and he has "no idea" where those drawings are located. (*Id.*, 9:6-11).

By contrast, Gary Broda provided unequivocal testimony that IC approved the location of the cable in Mississippi, Tennessee, and Louisiana. Lowe's testimony about his lack of memory about the project neither rebuts Broda's testimony nor creates a question of fact for the jury. *See Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir. 1983)

4

(lack of memory does not create a question of fact). Further, IC did not present any other witnesses who were involved in the layout or installation of the cable in Tennessee, Mississippi, or Louisiana. The undisputed testimony therefore reflects that 360 and IC jointly selected the location of the cable, and IC approved the specific placement of the cable in the field. (*See generally* testimony of Gary Broda).

If all of this were not enough, the undisputed evidence (*see* Broda testimony at 29:14-19; 60:18–61:19; 65:12-25; 87:11-24) reflects that IC received and approved working drawings, which under the undisputed circumstances involved here also provided IC's approval of the location of the cable. (See Exs. 100 & 101, License Agreements § 7.3(b)-(c) ("IC shall have 30 days after receipt of the Working Drawings to approve or disapprove thereof in whole or in part…Failure of IC to notify [360] within the applicable time period of its disapproval of the Working Drawings shall be considered approval by IC.")

Because it is undisputed IC approved the location of the cable, IC's claims and defenses regarding the location of the cable are without merit, and 360 is entitled to judgment as a matter of law.

**B. 360 is also entitled to judgment as a matter of law on IC's claims which allege breaches of contract unrelated to IC's approval of the location of the cable.**

Most of IC's contract claims and defenses relate to the issue of whether IC approved the location of the cable, discussed above. However, IC makes several claims that are unrelated to its approval of the location of the cable. 360 is also entitled to judgment as a matter of law on each of these claims and defenses.

### 1. Failing to Maintain the Facilities

IC alleges 360 breached the License Agreements "by failing to maintain the facilities as required by Section 14 of the Agreements." (*See* IC's Proposed Jury Instruction No. 4). IC's allegations regarding 360's alleged failure to "maintain" the facilities are irrelevant because the License Agreements contain a specific provision governing relocations (*see* Section 17.2). The provision regarding "maintenance" of the facilities (Section 14) has no bearing on the issues presented in this case. The Court already concluded Section 17.2 governs the issue of which party must bear the relocation costs. (*See* May 10, 2007 Order; May 28, 2010 Order). As a matter of law, IC should not be permitted to argue that the relocations of the cable constituted "maintenance" of the cable for which 360 should bear the costs. The specific provision regarding relocation of the cable (Section 17.2) controls over the more general provision regarding maintenance (Section 14).

360 is also entitled to judgment as a matter of law on this issue because there is no evidence that 360 failed to properly "maintain" the cable. In addition, IC has not elicited any evidence regarding damages proximately caused by 360's alleged failure to "maintain" the cable. The only evidence of IC's alleged damages relates to relocation costs, which are unrelated to maintenance of the facilities and are controlled by Section 17.2 of the License Agreements, not Section 14.

Moreover, to the extent this allegation is construed as a defense to 360's breach of contract claims, this allegation also fails as a matter of law because this would not constitute a material breach and it would not excuse IC's performance of its obligations

under the Agreements (including payment of relocation costs pursuant to Section 17.2). (*See* May 28, 2010 Order).

For these reasons, 360 is entitled to judgment as a matter of law on IC's allegations regarding maintenance of the facilities.

**2.     Failure to Provide As-Built Drawings**

360 is also entitled to judgment as a matter of law on IC's claim/defense that 360 breached the License Agreements "by failing to provide as-built maps as required by Section 8.9 of the Agreements." (*See* IC's Proposed Jury Instruction No. 4). The evidence is undisputed that 360 provided as-built maps to IC. Gary Broda testified he made sure as-built maps were provided to IC. (Gary Broda Testimony, 86:13 – 87:12). IC's Eric Clegg confirmed that 360 produced as-built drawings to IC. (Clegg Testimony, 11:20 – 12:6).

Like IC's allegations regarding maintenance of the cable, this allegation also fails as a defense to 360's contract claims because this would not constitute a material breach and would not excuse IC's performance under the Agreements. (*See* May 28, 2010 Order). IC also has not produced any evidence of damages proximately caused by any issues relating to as-built maps. Accordingly, 360 is entitled to judgment as a matter of law on IC's claim/defense relating to as-built drawings.

**CONCLUSION**

The evidence presented by IC does not create a legally sufficient evidentiary basis from which a reasonable jury could conclude IC did not approve the location of the cable. Because IC approved the location of the cable, 360 is entitled to judgment as a matter of law on all of its claims and on all of IC's claims and counterclaims. The only remaining issue is the amount of damages to which 360 is entitled.

Dated this 9th day of June, 2010.

Respectfully submitted,

360networks Mississippi, L.L.C., formerly known as IC Fiber Mississippi, L.L.C., 360networks Tennessee, L.L.C., formerly known as IC Fiber Tennessee, L.L.C., and 360networks Louisiana, L.L.C., formerly known as IC Fiber Louisiana, L.L.C.

By: _____/s/ Kevin B. Duff_____
Joseph E. Jones
Patrick S. Cooper
FRASER STRYKER PC, LLO
500 Energy Plaza
409 South 17th Street
Omaha, Nebraska 68102-2663
(402) 341-6000

and Kevin B. Duff
Michael Rachlis
Rachlis Durham Duff & Adler, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
Phone: (312) 733-3390
Fax: (312) 733-3952
Email: kduff@rddlaw.net
ATTORNEYS FOR 360networks

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the above and foregoing was served by hand and electronically filed with the Court via the CM/ECF system on this 9th day of June, 2010, and e-mail notification was thereby served upon James Helenhouse and Peter McLeod, FLETCHER & SIPPEL, LLC, 29 North Wacker Drive, Suite 920, Chicago, Illinois 60606-2832.

                        /s/ Kevin B. Duff

542031