IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| 360networks Tennessee, L.L.C., formerly known as IC Fiber Tennessee, L.L.C., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois corporation, <br><br> Defendant. | Case No. 05 C 3198 <br><br> Consolidated with No. 05 C 3200 and No. 06 C 5558 <br><br> Judge Robert M. Dow, Jr. <br> Magistrate Judge Morton Denlow |

## 360NETWORKS' SUPPLEMENTAL RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL

During trial, the Court took under advisement two Motions for Judgment as a Matter of Law filed by 360networks Mississippi, LLC, 360networks Tennessee, LLC, and 360networks Louisiana, LLC (collectively "360"). 360 hereby requests the Court grant its Motions for Judgment as a Matter of Law, and 360 hereby renews those Motions pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. In the alternative, 360 moves the Court for an order granting a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.

### Renewed Motion for Judgment as a Matter of Law

### RULE 50 STANDARD

Rule 50(a)(1) provides that judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue..." Fed.R.Civ.P. 50(a)(1). Judgment as a matter of law under Rule 50(a) is appropriate if "reasonable persons could not find that the evidence justifies a decision for a party on each essential element." *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 333 (7th Cir. 1994).

See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (holding no genuine factual issue exists where the nonmoving party fails to prove an essential element of its case); *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986) (stating that standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must grant a directed verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict"). In considering a motion for judgment as a matter of law, the Court must view the record as a whole and must consider the record in the light most favorable to the non-moving party. *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004).

"[A] mere scintilla of evidence is not sufficient to sustain a verdict." *El-Bakly v. AutoZone, Inc.*, 2009 WL 65717 (N.D.Ill. Jan. 9, 2009) (Dow, J.) (citing *Filipovich v. K & R Express Sys. Inc.*, 391 F.3d 859, 863 (7th Cir. 2004)).

The moving party may renew its Motion for Judgment as a Matter of Law after trial. *See* Fed.R.Civ.P. 50(b).

## SUMMARY OF ARGUMENT

Although IC had the burden of proof at trial, IC did not present any evidence that 360 installed the cable in locations not approved by IC or that 360 materially breached the License Agreements. 360 was entitled to judgment as a matter of law at the conclusion of IC's case. 360 was also entitled to judgment as a matter of law at the end of trial because 360 presented undisputed evidence that IC approved where the cable was installed.

In addition, 360 is entitled to judgment as a matter of law on all claims because IC waived the right to object to the location of the cable by not exercising its contract rights to insist on working drawings or object to the cable location before the cable was installed.

In the alternative, 360 is entitled to a new trial because the jury's verdict is against the manifest weight of the evidence and the damage award is excessive and unsupported by the evidence.

**ARGUMENT**

I. **ILLINOIS CENTRAL APPROVED THE LOCATION OF THE CABLE.**

   A. **Despite bearing the burden of proof, Illinois Central did not present any evidence it did not approve the location of the cable.**

The Court ruled IC had the burden of proving 360 installed the cable in locations that were not approved by IC. (May 28, 2010 Order ("Illinois Central bears the burden of proof on its allegations that 360 materially breached the agreements at issue..."; "360 did not breach the Agreements if IC approved the location of the cable"); see also Jury Instructions). IC did not offer any evidence that it did not approve the location of the cable. Accordingly, 360 was entitled to judgment as a matter of law at the conclusion of IC's case.

IC called five witnesses. Only two of those witnesses - Gary Broda and Dave Lowe - were involved in the initial construction process. Broda testified unequivocally that IC representatives approved the location of the cable by helping select where the cable would be installed, by receiving and approving working drawings, and by not objecting to the cable location during construction. In particular, Broda testified as follows:

- 360 representatives "worked directly with the railway...to determine the exact placement of the cables." (Broda Testimony, 13:17 – 14:1).

- IC engineers were on site during the project and had authority to determine where the cable was to be installed. (Id., 64:5-10).

- The location of the cable was "approved by the responsible [railroad] engineer on site." (Id., 43:12 – 44:5).

- When the parties jointly selected where to install the cable, they were cognizant of the potential for future relocation projects and they decided to use directional boring

at the bridges, rather than attaching the cable to the bridges, even though directional boring was ten times as costly. (*Id.*, 79:21 – 80:13).

- When determining where to install the cable, IC representatives often directed 360 to avoid certain locations within IC's right of way because of possible conflict with IC's buried plant or possible future building projects in the area. (*Id.*, 61:10 – 65:11).

- Working drawings were developed in the field in conjunction with IC engineers. Working drawings were prepared for each of the bridges along the route. (*Id.*, 29:14-19; 60:18 – 61:19).

- The working drawings were delivered to IC to approve, and IC approved the location where 360's cable was going to be installed. (*Id.*, 65:12-25).

- 360's cable was installed where IC wanted it installed, including at the wooden bridges along the route. (*Id.*, 99:25 – 100:4).

- IC never advised Broda of any complaints or objections regarding the working drawings. (*Id.*, 87:11-24).

Broda's testimony is the only evidence IC presented on the approval issue.

The only other witness IC called who had any involvement in the cable installation was Dave Lowe. Lowe did not recall a single detail about the construction project. (Lowe Testimony, 7:8 – 8:7; 12:7-18; 24:24 – 27:3; 9:6-11). Lowe could not recall whether 360 provided working drawings to IC. (*Id.*, 12:7-18; 24:24 – 27:3; 9:6-11). Lowe's inability to remember details about this project did not help IC carry its burden of proving 360 did not install the cable in locations approved by IC. *See Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir. 1983) (lack of memory does not create a question of fact). IC's three other witnesses - Eric Clegg, Allen Hemrich, and Terry Ellington - did not offer any testimony on the approval issue because they were involved only in the relocation of the cable, not the initial installation. IC's Eric Clegg specifically testified he did not know whether 360 delivered working drawings to IC. (Clegg Testimony, 48:5-17). IC did not offer any evidence that it did not participate in the hi-rail process, select where the cable should be

installed, approve the cable location in the field, or receive working drawings. IC also did not present any evidence it objected to the working drawings or otherwise complained about the cable location. Because IC's only evidence regarding approval shows that IC approved the location of the cable, IC failed to satisfy its burden of proof and 360 was entitled to judgment as a matter of law at the conclusion of IC's case. The Court should enter judgment as a matter of law in favor of 360 on all claims.

### B. 360 presented unrefuted evidence that IC approved the location of the cable.

IC's lack of evidence on the issue of approval stands in stark contrast to the substantial evidence presented during 360's case that IC approved the location of the cable on multiple occasions. Because the evidence that IC approved the location of the cable remained undisputed at the end of trial, 360 was entitled to judgment as a matter of law on all claims.

Iain Morris testified that IC approved the location of the cable in numerous ways and on multiple occasions:

- 360 and IC representatives jointly laid out and staked the entire route. (Iain Morris Testimony, 15:2 – 18:25; 98:19 – 99:2).

- IC personnel approved the location where the route was staked before construction began. (*Id.*, 16:24 – 17:1).

- Working drawings were provided to IC, and IC approved the working drawings. (*Id.*, 15:2-19; 18:2-25; 19:21-25; 47:13-15; 60:9-18; 61:4-11; 94:15-18; 99:3-18; 103:3-13).

- After IC received the working drawings, IC did not object to the working drawings. (*Id.*, 19:21-25).

- 360 did not begin construction until IC approved the working drawings. (*Id.*, 20:9-15).

Dave Ferryman, IC's division engineer for the gulf region where the cable was installed, also confirmed IC approved the location of the cable before it was installed. In particular, Ferryman testified:

- 360 and IC were jointly responsible for oversight of the installation of the cable in Tennessee, Mississippi, and Louisiana. (Ferryman Testimony, 13:24 – 14:6).

- Ferryman appointed certain IC employees to work with 360 in determining where to install the fiber optic cable. (*Id.*, 14:9-17).

- Ferryman directed John Green to make sure the cable was agreeable to personnel from other IC divisions. Ferryman never received any complaints that Green did not perform his job, and Ferryman believes Green made sure 360 installed the cable in locations that were agreeable to IC. (*Id.*, 85:8 – 86:6; 88:18 – 89:12; 96:18 – 97:13; *see also* Ex. 139).

Jerrry Tolene, an engineering superintendent for IC in Mississippi and Tennessee during the construction project, also confirmed IC approved the location of the cable. Tolene's testimony showed:

- Tolene was instructed to make sure the running line was acceptable to IC, and he followed the instruction and made sure the cable was installed in locations acceptable to IC. (Tolene Dep., 40:15 – 41:24; 68:21 – 69:5; 77:5-11; *see also* Ex. 139).

- Tolene was present in the right of way during the installation of the cable and he did not object to the location of the cable. (*Id.*, 40:1-11; 67:17 – 69:5).

Cecil Coker also testified the route was staked in the field and the cable did not interfere with IC's operations. Coker testified:

- The route was staked before the installation project began. (Coker Testimony, 27:24 – 29:1).

- The 360 installation did not interfere with IC's operations. (*Id.*, 35:20 – 36:5; 38:16-22).

- Before he retired from IC in 2002, Coker never heard anyone claim the cable interfered with IC's operations. Coker did not even learn of the dispute between 360 and IC until 2010. (*Id.*, 26:18 - 27:5; 40:17-20; 15:7-10).

360's final witness, Jason Squires, offered detailed, unequivocal testimony about IC's approval of the location of the cable. In particular, Squires testified as follows:

- 360 and IC jointly selected the location of the cable during the hi-rail process. (Squires Trial Testimony).

- During the hi-rail process, representatives from IC's bridge department instructed 360 where and how to install the cable at each bridge along the route. (*Id.*)

- The route was staked in the field with input from IC personnel. (*Id.*)

- Instructions about cable placement were painted on the rail. (*Id.*)

- Working drawings were delivered to IC personnel. (*Id.*)

- IC approved working drawings in the field. (*Id.*)

- IC engineers were present in the field and never objected to the location where the cable was being installed. (*Id.*)

IC did not present any evidence to meet its burden of proving 360 installed the cable in locations that were not approved by IC. Because IC did not present any evidence the cable location was not approved by IC, 360 is entitled to judgment as a matter of law on all of its claims and on all of IC's claims. Any other result would ignore the Court's prior rulings and instructions relating to IC's burden of proof and would contradict the lack of evidence presented by IC at trial. *See El-Bakly v. AutoZone, Inc.*, 2009 WL 65717 (N.D.Ill. Jan. 9, 2009) (Dow, J.) (granting post-trial renewed motion for judgment as a matter of law; "a mere scintilla of evidence is not sufficient to sustain a verdict").

## II. AS A MATTER OF LAW, IC WAIVED THE RIGHT TO OBJECT TO THE LOCATION OF THE CABLE AS A MATTER OF LAW.

Because IC had a contractual right to object to the location of the cable and IC did not object to the location of the cable, IC is barred as a matter of law from later complaining about where the cable was installed as a matter of law. IC had the contractual right to: (1) insist that 360 furnish working drawings before it began

construction, (2) object to the working drawings, and (3) prevent 360 from beginning construction until the working drawings had been approved. (*See, e.g.*, Exs. 100 & 101, §§ 7.1 - 7.4). IC also had the contractual right to approve the location of the markers showing the location and depth of the underground facilities. (*Id.*, § 13). Because IC did not take advantage of its contractual rights to prohibit 360 from beginning work until the cable location was approved, to require the production of working drawings before the cable was installed, and to approve the location of the cable markers showing the location of the underground cable, as a matter of law, IC waived any right it had to object to the cable location years after the construction was concluded.[1]

Under Illinois law, IC waived its contractual right to object to the location of the cable by allowing 360 to install the cable before 360 had produced working drawings or otherwise obtained IC's approval of the cable location. IC's failure to insist on working drawings, and its conduct in allowing 360 to complete the project without first furnishing working drawings, is similar to the facts in *Geier v. Hamer Enterprises, Inc.*, 226 Ill. App. 3d 372, 589 N.E.2d 711 (1st Dist. 1992), where the Illinois court found waiver as a matter of law. In *Geier,* the construction contract required the contractor to furnish proof of insurance to the owner before beginning the work. The owner did not demand proof of insurance and the contractor did not furnish proof of insurance, yet the owner allowed the contractor to perform the work. The court held that by allowing the contractor to complete the work without insisting that the contractor furnish proof of insurance, the owner waived its claim for breach of contract against the contractor as a matter of law. *Geier*, 226 Ill.

---

[1] 360 believes the undisputed evidence shows that IC received and approved working drawings and approved the location of the cable. However, even if that evidence is ignored, 360 would still be entitled to judgment as a matter of law because IC failed to exercise its rights to object to the location of the cable during the construction project. Accordingly, IC waived its right to object to the location of the cable years later.

8

App. 3d at 389-91, 589 N.E.2d at 721-23; *see also Wagner Excello Foods, Inc. v. Fearn Int'l, Inc.*, 235 Ill. App. 3d 224, 232-34, 601 N.E.2d 956, 961-63 (1st Dist. 1992) (plaintiff's course of conduct, in failing to object to noncompliance with contract, lulled defendant into believing strict compliance with contract requirements would not be required; plaintiff waived right to later insist on strict compliance); *Whalen v. K-Mart Corp.*, 166 Ill. App. 3d 339, 343, 519 N.E.2d 991, 994 (1st Dist. 1988) (discussing implied waiver under Illinois law). Like the *Geier* owner's failure to insist on proof of insurance and allowing the contractor to perform the work without proof of insurance, IC either approved or did not demand working drawings and allowed 360 to complete the construction without working drawings. IC's conduct operates as a waiver as a matter of law. 360 is entitled to judgment as a matter of law on this issue.

The significant scope of this project also supports waiver. The undisputed evidence established that the fiber optic network installation project extended approximately 1,000 miles from Chicago to New Orleans and required over a year to complete. Jason Squires testified that 150 to 200 people were working on this project in the field. (Squires Trial Testimony.) The cable installation required large, and very visible, equipment, including the rail plow (Exs. 111 & 121) and several directional boring machines. As the segments of the route were completed, 360 installed permanent marker posts indicating the approximate location of the cable. Exhibits 128, 130, 131, and 132 include several pictures showing the markers in the vicinity of the relevant bridges. Yet at no time during this lengthy construction project did IC complain about placement of the cable or any other breach of the License Agreements. Because the evidence, considered in the light most favorable to IC, reflects that IC did not enforce its rights under the License Agreements to approve the location of the cable, IC waived its right to object to the location of the cable

9

after the construction project was completed. Accordingly, 360 is entitled to judgment as a matter of law on all claims.

## III. ILLINOIS CENTRAL DID NOT OFFER EVIDENCE THAT 360 MATERIALLY BREACHED THE LICENSE AGREEMENTS.

The Court ruled IC had the burden of proving 360 materially breached the License Agreements. (*See* May 28, 2010 Order ("For the reasons stated above, the Court determines that Illinois Central bears the burden of proof on its allegations that 360 materially breached the agreements at issue..."); *see also* Jury Instructions regarding burden of proof). Yet, IC offered no evidence of material breach by 360.

### A. The License Agreements contain express provisions for installation of the cable.

The License Agreements establish a process for determining how and where the cable should be installed. This process relies upon the submission and approval of Working Drawings. Section 7.3(a) requires 360 to submit Working Drawings:

> [360] shall prepare and submit to IC the Working Drawings with respect to a Specified Portion. Such Working Drawings shall be in sufficient detail (including but not limited to, the location on the IC ROW of the proposed Facility and all the contemplated shelter and Repeater Sites) to enable IC to determine whether the implementation is acceptable to IC.

Section 7.3(b) establishes a framework for IC to approve or disapprove of the Working Drawings within a thirty (30) day period. In the event IC failed to disapprove of the Working Drawings, then according to the express terms of the License Agreements the "failure of IC to notify [360] within the applicable time period of its disapproval of the Working Drawings shall be considered approval by IC." (Exs. 100 & 101, Section 7.3(c)).

Other provisions of the License Agreements describe the approval process and various restrictions for 360 to gain access to the IC right of way. Section 7.1 requires 360 to secure approval from the Engineer for all access. Section 7.2 requires 360 to provide

the Engineer with seventy-two hours advance notice of the location and dates for construction. Section 7.4 ties approval of the Working Drawings to 360's access to the IC right of way: "Subject to Sections 7.1 and 7.2, upon approval by IC of [360]'s Working Drawings, [360] and its contractors may enter upon the IC ROW for the purpose of commencing the installation of the Facility related to the approved specified portion." IC did not offer any evidence that 360 breached any of these contract provisions.

### 1. IC did not offer evidence of a material breach of the contract requirements relating to working drawings.

IC did not offer any evidence that 360 failed to provide working drawings. Instead IC presented testimony from IC representatives explaining that they either (1) did not know if 360 provided working drawings to IC (*see* Clegg Testimony, 48:5-17), or (2) could not remember whether 360 provided working drawings. (Lowe Testimony, 12:7-18; 24:24 – 27:3; 9:6-11). As a matter of law, IC's evidence does not satisfy its burden of proof. *See Posey*, 702 F.2d 102 (lack of memory does not create a question of fact). IC did not present any evidence that 360 failed to produce working drawings. In contrast, several of 360's witnesses unequivocally testified that 360 delivered working drawings to IC. (*See* Broda Testimony, 29:14-19; 60:18 – 61:19; 65:12-25; 87:11-24; Iain Morris Testimony, 15:2-19; 18:2-25; 19:21-25; 47:13-15; 60:9-18; 61:4-11; 94:15-18; 99:3-18; 103:3-13; *see also* Squires Testimony). IC also did not offer evidence that IC disapproved the working drawings. Pursuant to section 7.3, the working drawings are deemed approved if IC did not object within thirty (30) days.

### 2. IC did not offer any evidence that 360 failed to install the cable in accordance with the approved working drawings.

IC did not offer any evidence that 360 failed to install the cable in accordance with the working drawings or that 360 accessed the right of way in violation of the License

Agreements. Instead, IC pointed to minutes from a July 28, 1999 pre-construction meeting, which stated that Stan "suggested" installing the cable at the edge of the right of way. IC extrapolated Stan's suggestion to argue there was no approval process at the bridges as required by the various sections in Article 7 of the License Agreements because IC assumed 360 was following Stan's suggestion and installing the cable at the edge of the right-of way. IC did not present any evidence to support the argument that it believed 360 was installing the cable at the edge of the right of way. To the contrary, the only evidence on this issue showed that IC helped select the location where the cable would be installed, approved working drawings showing the location where the cable would be installed, and IC personnel did not object to the cable location at any point during the two-year project. As a matter of law, 360 was not bound by Stan's extra-contractual "suggestion,", and Stan's suggestion cannot serve as the basis for a judgment in favor of IC. *See* Exs. 100 & 101, § 33.1 (providing that the License Agreements may be amended only by a written signed agreement of the parties).

IC was required to offer evidence that 360 installed the cable in a location other than the approved location and demonstrate that this difference was substantial enough to constitute a material breach. IC did neither. IC did not offer any evidence that 360 installed the cable anywhere other than the approved location. As a result, IC failed to satisfy its burden of proof of showing a material breach.

### 3. IC did not offer any evidence that the cable unreasonably interfered with IC's operations.

IC did not offer any evidence of unreasonable interference. While IC offered evidence of relocation costs at various bridges, evidence of relocations, without more, does not prove unreasonable interference. In fact, the License Agreements specifically contemplate and address relocations in sections 17.1 and 17.2, and thus the fact that the

cable was relocated does not, by itself, demonstrate a material breach by 360. *Gleicher, Friberg & Associates, M.D v. of Health Sciences*, 224 Ill. App. 3d 77, 86, 586 N.E.2d 418, 424 (1st Dist. 1991) (court has duty "to harmonize the provisions of a contract...and to avoid construction which renders some provisions meaningless"). As explained above, IC did not offer any evidence showing that 360 materially breached any of the approval requirements in Article 7 for installation of the cable. Rather, the undisputed evidence establishes that the cable was installed in locations approved by IC. Accordingly, there can be no unreasonable interference. (*See* May 28, 2010 Order ("360 did not breach the Agreements if IC approved the location of the cable."); *see also* Jury Instructions regarding burden of proof).

### IV. 360 IS ALSO ENTITLED TO JUDGMENT AS A MATTER OF LAW ON IC'S BREACH OF CONTRACT CLAIMS BECAUSE IC FAILED TO PROVE PROXIMATE CAUSE.

In the alternative, the Court should grant judgment as a matter of law on IC's claims, in favor of 360, because IC failed to present any evidence showing any damages were proximately caused by any alleged breach of contract by 360. The only damages claimed by IC were for costs incurred to relocate the cable at certain bridges. However, IC did not present any evidence showing the relocations were necessitated by any alleged breach of contract by 360. IC focused on minor deviations between bore profile drawings and the sonde locates, but the evidence shows the cable would have needed to be relocated if the cable had been placed in either location.

IC's damages could only be linked to its contract claims if the jury was permitted to conclude that 360 had a contractual duty to install the cable at the edge of the right of way, and if the evidence reflected that installing at the edge of the right of way would have eliminated the need to relocate the cable. However, Stan's "suggestion" to install the cable

at the edge of the right of way was not a contract term and did not impose any obligation on 360 to install the cable at the edge of the right of way. In addition, there is no factual basis in the record to support the damage award of $232,995.78.

Because IC failed to prove the damages awarded to it were proximately caused by any alleged breach by 360, the Court should enter judgment as a matter of law in favor of 360 on IC's claims.

### V. IN THE ALTERNATIVE, 360 IS ENTITLED TO A NEW TRIAL BECAUSE THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE DAMAGES AWARD IS EXCESSIVE AND UNSUPPORTED BY THE EVIDENCE.

In the alternative, 360 moves for a new trial pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure. "In ruling on a motion for new trial, federal law requires a district court to determine whether the verdict is against the weight of the evidence…the damages are excessive, or…for other reasons, the trial was not fair to the party moving." *BP Amoco Chemical Co. v. Flint Hills Resources, LLC*, 2010 WL 1131660 (N.D.Ill. March 25, 2010) (citing *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)). A verdict must be set aside as contrary to the manifest weight of the evidence if no reasonable jury could have rendered the verdict. *Id.* (citation omitted). "[A] new trial may be granted even when judgment as a matter of law is inappropriate." *Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1017 (3d Cir. 1995) (citing *Roebuck v. Drexel University*, 852 F.2d 715, 735 (3d Cir. 1988); *American Bearing Co. v. Litton Indus.*, 729 F.2d 943, 948 n.11 (3d Cir. 1984); *Rousseau v. Teledyne Movible Offshore, Inc.*, 812 F.2d 971, 972 (5th Cir. 1987)). In ruling on a motion for new trial, the Court "is not required to take that view of the evidence most favorable to the verdict-winner," and the Court "may set aside the verdict even though there is substantial evidence to support it." 11 Fed. Prac. & Proc. Civ. § 2806.

360 incorporates herein the arguments set forth above in support of 360's Renewed Motion for Judgment as a Matter of Law. For those reasons, the verdict is contrary to the manifest weight of the evidence, and the damages award is excessive because the damages awarded to IC were not proximately caused by any alleged breach of contract by 360.

In addition, the Court should grant a new trial because the Jury Instructions contained plain error. See Fed.R.Civ.P. 51(d)(2). For example, although the Court instructed the jury, in connection with IC's affirmative defense, that the cable did not unreasonably interfere with IC's operations if IC approved the location of the cable, the Court did not offer a similar instruction when advising the jury of IC's burden of proof on IC's breach of contract claims. Because the jury was not advised of that issue, the Instruction regarding IC's claims was inconsistent with the other jury instructions, inconsistent with the Court's prior orders, and was likely to confuse the jury. Moreover, the instructions contained plain error in advising the jury that IC met its burden of proof if IC proved **either** 360 installed the cable in locations that unreasonably interfered with IC's operations **or** 360 failed to obtain the approval of IC as to the location of the cable. (See Jury Instruction regarding burden of proof). Here, the Court already concluded IC could not meet its burden of proof if it approved the location of the cable. Accordingly, the jury should have been instructed that IC had to prove **both** unreasonable interference and failure to obtain approval. The burden of proof instructions are contrary to the Court's earlier Orders on this issue. Accordingly, if the Court declines to enter judgment as a matter of law, the Court should grant 360's request for a new trial on all issues.

## CONCLUSION

IC did not meet its burden of proving 360 installed the cable in locations IC did not approve. IC did not meet its burden of proving 360 materially breached the License Agreements. In addition, IC waived any right to object to the location of the cable by failing to enforce the contract provisions which gave IC the right to voice those objections before the cable was installed. Because IC did not meet its burden of proof, and because IC waived its right to object to the cable location, 360 is entitled to judgment as a matter of law on all of its claims and on all of IC's claims and counterclaims. The Court should enter judgment in favor of 360 in the amount of $783,912.35, plus interest and costs.

In the alternative, the Court should grant judgment as a matter of law in favor of 360 on IC's claims because IC failed to prove its damages were proximately caused by any alleged breach of contract by 360.

If the Court declines to enter judgment as a matter of law in favor of 360, the Court should grant 360's Motion for New Trial because the verdict was against the manifest weight of the evidence, the damage award is excessive and unsupported by the evidence, and the Jury Instructions contained plain error.

Dated this 24th day of June, 2010.

    Respectfully submitted,

    360networks Mississippi, L.L.C., formerly known as IC Fiber Mississippi, L.L.C., 360networks Tennessee, L.L.C., formerly known as IC Fiber Tennessee, L.L.C., and 360networks Louisiana, L.L.C., formerly known as IC Fiber Louisiana, L.L.C.

By:   /s/ Kevin B. Duff
Joseph E. Jones
Patrick S. Cooper
FRASER STRYKER PC, LLO
500 Energy Plaza
409 South 17th Street
Omaha, Nebraska 68102-2663
(402) 341-6000

and   Kevin B. Duff
Michael Rachlis
Rachlis Durham Duff & Adler, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
Phone: (312) 733-3390
Fax: (312) 733-3952
Email: kduff@rddlaw.net

ATTORNEYS FOR 360networks

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the above and foregoing was electronically filed with the Court via the CM/ECF system on this 24th day of June, 2010, and e-mail notification was thereby served upon James Helenhouse and Peter McLeod, FLETCHER & SIPPEL, LLC, 29 North Wacker Drive, Suite 920, Chicago, Illinois 60606-2832.

    /s/   Kevin B. Duff
    Kevin B. Duff
    Rachlis Durham Duff & Adler, LLC
    542 S. Dearborn Street, Suite 900
    Chicago, IL 60605
    (312) 733-3950
    Kduff@rddlaw.net